641 A.2d 971

**Ralph L. JANDORF**

v.

**Sharon A. JANDORF.**

No. 1074 Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 3, 1994.

430

---

Harry A. Baumohl, Towson, argued for appellant.

Jane E. Fields, argued (Britta Hugoson–Burnet, on the brief), Baltimore, for appellee.

Argued before GARRITY, WENNER and FISCHER, JJ.

FISCHER, Judge.

This appeal is brought by Ralph L. Jandorf, appellant, who seeks review of a decision by the Circuit Court for Baltimore County in a divorce action brought by Sharon A. Jandorf, appellee.

Appellant presents issues as follows:

1. Did the trial judge err in his determination and valuation of the marital property of the parties?

2. Did the trial judge err in his failure to grant a monetary award to the appellant, in light of the evidence presented at trial?

The parties were married on November 10, 1968, in Baltimore by a religious ceremony. The children born of the union are now emancipated. A separation, which has continued without interruption, occurred on July 4, 1989, when the wife (appellee) left the family home. Neither party seeks alimony, and the only matters at issue are those of property and monetary award.

In 1968, prior to the marriage, appellant purchased, in his name alone,[1] real property located at 116 Sudbrook Lane in Baltimore County. The purchase price was $23,900. The property was sold for $30,000, and the testimony was that the

---

1. The reason given for the sole titling was that appellee was a minor, age 20, at the time of the purchase.

surplus funds received were used in part to purchase personal property, including furniture, and for improvements to the subsequent marital home at 3705 Buckingham Road in Baltimore County. The Buckingham Road property is the primary focus of this appeal. This property was the home of appellant's parents and was inherited by appellant upon the death of his mother, Ruby Jandorf. At the time of her death, the property was appraised at $40,500. Subsequent to Mrs. Jandorf's death, appellant sold the Sudbrook Lane property and moved into Buckingham Road as the marital home. During the process of settling his mother's estate, appellant deeded Buckingham Road from the estate to the appellant and appellee as tenants by the entireties.

Testimony showed that, at the time of Mrs. Jandorf's death, a small mortgage of $7,000 was due on the Buckingham Road property. The parties subsequently paid this mortgage from marital funds and that payment constitutes the marital contribution to the Buckingham Road property.

On November 24, 1986, the parties obtained a $25,000 loan from appellee's credit union, and a lien was placed on Buckingham Road as security for the debt. All of the payments on the loan, found by the circuit court to total $11,792, were paid by appellee through payroll deductions.

The trial court, apparently, refused to consider, or even hear, any testimony related to whether personal property owned by the parties was marital or non-marital or of its value.

At trial:

THE COURT: Let me ask you this. I don't have a problem with the house, but what about all the furniture and contents; have they agreed how they are going to distribute that?

MRS. FIELDS: No, Your Honor.

THE COURT: Tell them, while we're taking the time that the Bollinger rule is in force, they agree on the pots, pans and chattel or they don't in fifteen minutes agree, it gets sold, a trustee is appointed, it is sold at auction and all

proceeds will be divided equally after the trustee and the auctioneer get their proceeds, which will leave them about fifty cents on the dollar. I don't sit here and decide where the pots and pans go.

MR. BAUMOHL: The only issue is whether or not its non-marital or marital.

THE COURT: They will decide chattels or that is what I will do. Now, I will be glad to take any testimony on the house or on the divorce, if we're proceeding on that.

Following the hearing, the court announced that it was granting an absolute divorce to appellee on the ground of a two year separation. The court thereafter received memoranda from counsel and rendered its written Opinion and Order on February 2, 1993.

In his opinion, the trial judge stated that the only remaining issues for the court to consider were marital property and any monetary award. The applicable remainder of the opinion is as follows:

This Court has reviewed the Joint Statement of the parties and finds that the property agreed to as marital property listed in Paragraph 1 is marital property, with the values indicated. For those items that have a fair market value listed as unknown, the Court has received no evidence as to their value and, therefore, they will be valued at zero (0).

The parties also agree that the property listed under Paragraph 2 of the Joint Statement is not marital property as agreed and, therefore, said non-marital property shall remain in the possession of the titled entity.

Paragraph 3 of the Joint Statement concerns the main asset involved in this dispute, and that is the home at 3705 Buckingham Road. The Court finds that the personal property listed under paragraph 3 is, in fact, marital property, and assigns the values indicated on the Joint Statement. With respect to all the personal property so indicated on the Joint Statement, within thirty (30) days from the date of this Opinion and Order the parties will agree to voluntarily

distribute their knives and spoons, furniture and other personal items; or this Court will order all property sold by the Court Auditor, Mr. John Mudd, and after payment of his fees, commissions and expenses of sale the remainder, if any, will be equally divided between the parties.

As to the home at 3705 Buckingham Road, the present fair market value the Court finds to be $110,000.00; and the Court does find that this property is part marital and part non-marital. The liens against the property in the amount of $21,000.00 in the name of the wife alone the Court finds to be marital debt. In view of this the present equity in the home the Court finds to be $89,000.00. In addition, the Court finds that the non-marital property to be in the amount of $40,500.00, which is the value of the home when it was inherited by the husband. Thus the Court finds the marital equity to be $48,500.00.

This Court further finds that the wife has made the payments on the loans, which is a lien on the property, and finds that the wife has made 88 payments in the amount of $134.00 for a total amount of $11,792.00. The Court awards credits in the amount of these payments to the wife, i.e. $5,896.00. With a balance to be distributed in the amount of $42,604.00 the Court orders one-half of this amount to be paid to the Plaintiff wife, the amount of $21,302.00, for a total payment to the wife, counting the credits for the loan in the amount of $27,198.00.

In view of the above, the Court declines to consider any additional monetary award after giving due consideration to all the factors enumerated in Section 8–205 of the Family Law Article, Maryland Code Annotated.

. . . . .

And it is further ordered that the award to the Plaintiff wife is hereby reduced to judgment in favor of the wife and against the husband; and, in the event the Defendant husband cannot make adequate arrangements to purchase his interest from the wife, the home is to be sold and the

amounts distributed in accordance with this Opinion and Order.

An appropriate starting point for our analysis of this case is to set out the practical effect of what the trial court did. The court made a $27,198 monetary award to the wife. In addition, the court ordered that "in the event the Defendant husband cannot make adequate arrangements to purchase his interest from the wife, the home is to be sold and the amounts distributed in accordance with this Opinion and Order."

Assuming that appellee were to force a sale of the property, she would receive one-half of the net proceeds plus $27,198 from appellant's share of the proceeds. The approximate net proceeds would be $110,000 less the $21,000 joint debt of the parties which is a lien upon the property. The amount remaining for division is $89,000. From this amount, appellant would receive $44,500 less the $27,198 monetary award for a net of $17,302. Appellee would receive $44,500 plus the $27,198 monetary award for a net of $71,698. Since appellant's non-marital interest in the property is 85.3% of its value, this does not appear to be an equitable distribution to us and is probably not what the trial court intended.

■ It may be that the court anticipated that appellant would be reimbursed the $40,500, which the court found to be appellant's non-marital interest in the Buckingham Road property. But this is not possible under the court's Opinion and Order. Md.Code (1984, 1991 Repl.Vol.), § 8–202(a)(3) of the Family Law Article provides that the court may not transfer the ownership of real property from one person to another except as provided in § 8–205 (monetary award). In *Kline v. Kline,* 85 Md.App. 28, 44, 581 A.2d 1300 (1990), *cert. denied,* 322 Md. 240, 587 A.2d 246 (1991),[2] we held:

---

2. On May 26, 1994, Governor Schaefer signed into law Senate Bill 41, which alters the *Kline* holding. Fam. Law Article Section 8–201(e)(2) now provides, "Marital property includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement." It will have no effect on the case at bar, however, because it is, by its terms, prospective only.

"The court, when it grants a divorce, cannot return to the grantor spouse the legal interest that he or she had earlier given just because the gift was of nonmarital property; to do so would violate § 8–202(a)(3) of the Act, which expressly prohibits the divorce court from transferring ownership of property, real or personal, from one spouse to the other. *Watson [v. Watson]*, 77 Md.App. [622] at 631, 632, 551 A.2d 505 [ (1989) ]. *See also Rogers v. Rogers,* 80 Md.App. 575, 586, 565 A.2d 361 (1989); *Nisos v. Nisos,* 60 Md.App. 368, 380–381, 483 A.2d 97 (1984)."

Any adjustment of equities between the parties can be made only through a monetary award, and the court gave the monetary award to appellee. As Judge Bloom wrote for this Court in his preface to *Kline, supra,* "Although Maryland's Property Disposition in Annulment and Divorce Act (the Act) [3] has been the subject of extensive litigation since it became effective on 1 January 1979, some of its provisions continue to baffle and confuse bench and bar alike." *Kline,* 85 Md.App. at 35, 581 A.2d 1300. This case illustrates that the confusion referred to by Judge Bloom is still with us.

The trial court determined that the $21,000 loan was a marital debt. This determination was clearly erroneous. In *Kline,* 85 Md.App. at 45, 581 A.2d 1300, Judge Bloom stated, "A marital debt is a debt incurred to acquire marital property." The $21,000 at issue here was used for a number of purposes, but the acquisition of marital property was not one of them.[4] Therefore, the $21,000 cannot be subtracted from the value of the property in determining the amount of marital property. In addition, we do not agree with the finding that the non-marital portion is $40,500.[5] This was the appraised

---

3. Footnote omitted.

4. There was testimony that a portion of the money was used to purchase furniture for 3705 Buckingham Road, but no evidence was offered as to specifics.

5. For purposes of calculation, we have assumed $40,500 was the net appraised value of the home after subtraction of the $7,000 mortgage.

value of the home at the time it was inherited by appellant. Also, at that time there was a mortgage on the property of $7,000. This mortgage was paid during the marriage with marital funds and constitutes the marital portion of the property. The proportion of non-marital property to marital property was, therefore, $40,500 to $7,000. That same proportion should be carried through to the present value of $110,000. This results in 85.3% of the property being non-marital and 14.7% marital. It follows that $93,830 of the present value is non-marital and $16,170 is marital.

■ Initially, the trial court erred in refusing to hear any evidence as to the value of disputed items of personal property. To compound the problem, the trial court refused to determine whether certain property was marital, and if not, to determine its ownership. Instead, the court ordered the parties to sell the disputed property at public auction and evenly divide the proceeds. This approach is wrong for a number of reasons. The court's refusal to determine ownership of personal property perpetrates an injustice to the party with the superior claim to such property. The person with an inferior claim could simply refuse to agree, force a sale, and receive one-half of the proceeds. In addition, the court has authority only to order the sale of jointly owned property. Md.Code (1984, 1991 Repl.Vol.), § 8–202 of the Family Law Article.

■ The relevant law is contained in Md.Code (1984, 1991 Repl.Vol.), §§ 8–201 to 8–213 of the Family Law Article, otherwise known as the "Marital Property Act" (Act). In order to make a proper determination of a case such as the one at bar, the trial court must determine what property is marital property and value it. Md.Code (1984, 1991 Repl. Vol.), §§ 8–203 and 8–204 of the Family Law Article. It is mandatory for trial judges to carry out the provisions of §§ 8–203, 204, and 205 of the Family Law Article. *Deering v. Deering,* 292 Md. 115, 121, 437 A.2d 883 (1981); *Hoffman v. Hoffman,* 93 Md.App. 704, 712, 614 A.2d 988 (1992); *Freese v. Freese,* 89 Md.App. 144, 149, 597 A.2d 1007 (1991), *cert.*

*denied,* 325 Md. 396, 601 A.2d 129 (1992); *Quinn v. Quinn,* 83 Md.App. 460, 464, 575 A.2d 764 (1990); *Campolattaro v. Campolattaro,* 66 Md.App. 68, 73, 502 A.2d 1068 (1986); *Nisos v. Nisos,* 60 Md.App. 368, 382, 483 A.2d 97 (1984); *Cotter v. Cotter,* 58 Md.App. 529, 535, 473 A.2d 970 (1984); *Grant v. Zich,* 53 Md.App. 610, 614, 456 A.2d 75 (1983), *aff'd,* 300 Md. 256, 477 A.2d 1163 (1984); *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982); *Ayars v. Ayars,* 50 Md.App. 93, 97, 436 A.2d 490 (1981).

The court must also be aware of the approximate value of non-marital property so that it may properly evaluate the economic circumstances of the parties.

After the court decides whether the property is marital and determines its value, it must proceed to consider and evaluate the factors set forth in § 8–205 as follows:

(1) the contribution, monetary and nonmonetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(9) any award of alimony and any award of other provision that the court has made with respect to family use of personal property or the family home; and

(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

Md.Code (1984, 1991 Repl.Vol.), § 8–205 of the Family Law Article.

■ The trial court should be aware that the purpose of going through the steps outlined is to acquire the requisite information from which an informed, equitable decision can be made. The trial court should also understand that the enactment of the Act did not abrogate common law concepts of gift, title, etc. The role of the Act is to provide a mechanism for equitable distribution of certain property. The utility and effectiveness of the Act is dependant upon the existence of certain circumstances and it is not effective in all circumstances. This case is illustrative of circumstances wherein the Act is of limited effect. The reason it is of limited effect is that a monetary award can only be made from marital property and there is insufficient marital property in this case from which to make an appropriate award. The small amount of marital property in this case makes it all the more important for the trial court properly to categorize and value all of the property of the parties.

■ Shortly after the parties moved into the Buckingham Road property, appellant, acting for his late mother's estate, deeded the property to himself and appellee as tenants by the entireties. For common law purposes he thereby, presumptively, made a gift of one-half of his interest in the property to appellee. *Grant v. Zich,* 300 Md. 256, 271, 477 A.2d 1163 (1984). For purposes of determining equitable distribution under the Act, however, there is no presumption of gift of the marital interest. *Grant,* 300 Md. at 271, 477 A.2d 1163. *Watson v. Watson,* 77 Md.App. 622, 634, 551 A.2d 505 (1989).

In order to reach a satisfactory resolution of this case, the trial court must follow the steps outlined in sections 8–203, 8–204, and 8–205. After the court determines the marital property and its value, it will know how much money is available for adjustment of the equities. The court should also be aware of what we said in *Odunukwe v. Odunukwe,* 98 Md.App. 273, 282, 633 A.2d 418 (1993), quoting *Ward v. Ward,* 52 Md.App. 336, 343, 449 A.2d 443 (1982), " 'Since the function of a monetary award is to adjust the parties' equities in the marital property, it is elemental that a court cannot exceed the

total value of the marital property.' And of necessity, if the spouse to whom the court intends to grant a monetary award already owns (and thus will retain) any marital property, the award cannot exceed the value of the marital property owned by the other spouse."

■ Keeping these principles in mind, and with the understanding that upon sale of the house the appellee will receive, as joint owner, one-half of the net distribution, the court must determine to what extent it should grant a monetary award to appellant in order to reimburse him for the non-marital interest he possesses in the home. While making this calculation, the court should also consider the economic circumstances of the parties. Among the more important economic circumstances is the fact that, for practical reasons, appellee has been paying, and will until the house is sold, the joint debt of the parties, originally in the amount of $25,000.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**